# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

STEVEN DACUNHA,

     Plaintiff,

     v.

SKIP SAGRIS ENTERPRISES, INC.,

     Defendant.
_____

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 18-10999-DJC

## MEMORANDUM AND ORDER

**CASPER, J.**                                                 **August 31, 2020**

## I.     Introduction

Plaintiff Steven Dacunha ("Dacunha") has filed this lawsuit against Defendant Skip Sagris Enterprises, Inc. ("Skip Sagris") asserting claims for gender, sex and sexual orientation discrimination, harassment and retaliation pursuant to Mass. Gen. L. c. 151B and Title VII, 42 U.S.C. § 2000e *et seq*.  D. 1.  Skip Sagris now moves for summary judgment.  D. 24.  For the reasons discussed below, the Court ALLOWS the motion for summary judgment in part and DENIES it in part.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute regarding any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A material fact is one that "carries with it the potential to

affect the outcome of the suit under the applicable law." <u>García-González v. Puig-Morales</u>, 761 F.3d 81, 87 (1st Cir. 2014) (quoting <u>Newman v. Advanced Tech. Innovation Corp.</u>, 749 F.3d 33, 36 (1st Cir. 2014)) (internal quotation mark omitted).  The moving party "bears the burden of demonstrating the absence of a genuine issue of material fact." <u>Rosciti v. Ins. Co. of Pa.</u>, 659 F.3d 92, 96 (1st Cir. 2011) (citation omitted).  Once that burden is met, the non-moving party may not rest on the allegations or denials in his pleadings, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986), but, "with respect to each issue on which [he] would bear the burden of proof at trial," must "demonstrate that a trier of fact could reasonably resolve that issue in [his] favor." <u>Borges ex rel. S.M.B.W. v. Serrano-Isern</u>, 605 F.3d 1, 5 (1st Cir. 2010) (citations omitted).  The Court views the record in the light most favorable to the non-moving party, "drawing reasonable inferences" in his favor. <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009) (citation omitted). "Conclusory allegations, improbable inferences, and unsupported speculation," however, are "insufficient to establish a genuine dispute of fact." <u>Travers v. Flight Servs. & Sys., Inc.</u>, 737 F.3d 144, 146 (1st Cir. 2013) (citation and internal quotation mark omitted).

## III.    Factual Background

The following facts are drawn from the parties' statements of material facts, D. 26; D. 33, and supporting filings and are undisputed unless noted otherwise.  Skip Sagris operates a Dunkin Donuts franchise in Billerica, Massachusetts. D. 26 ¶ 1; D. 33 ¶ 1.  Dacunha began his employment as a crew member there in June 2017.  D. 26 ¶ 5; D. 33 ¶ 5.  Natasha Colon ("Colon"), another crew member at Skip Sagris, D. 26 ¶ 10, often worked the same shift as Dacunha or a shift that overlapped with his shift.  D. 33 ¶ 10.

Dacunha, who identifies as gay and bisexual, D. 33 ¶ 51, attests that on various occasions Colon, his co-worker, harassed him because of his sexual orientation.  On or about June 4, 2017, Colon called Dacunha a "faggot based on how [Dacunha] took an order." D. 33 ¶ 52.    Dacunha

complained to manager Lisa Gentile ("Gentile"), store manager Matthew Ribeiro ("Ribeiro") and shift leader Yamir Rodriguez ("Rodriguez") throughout his one-month employment at Skip Sagris about the harassment.  D. 33-2 (Dacunha Deposition) at 10.   Dacunha informed Ribeiro and Gentile about Colon's June 4, 2017 remarks.  D. 33 ¶ 52.  Gentile responded that she would need to personally witness the comment to address it.  D. 33 ¶ 52.   Ribeiro told Dacunha that it was "just the city that [they] live in" and " just to ignore [Colon]."  D. 33 ¶ 52.

In or about mid-June 2017, Colon referred to Dacunha as a "faggot" again in front of other employees and customers.  D. 33 ¶ 54.  Dacunha complained about this comment to Gentile, Rodriguez and Ribeiro.  D. 33-2 at 19-20.  Dacunha requested a mediation with management and Colon to discuss how that word offended Dacunha.  D. 33 ¶ 54.  Gentile agreed to a mediation session, but Ribeiro and Colon did not agree.  D. 33 ¶ 54.  Ribeiro again said that Dacunha should ignore Colon, that they had already discussed the topic and that there was nothing that could be done because "girls will be girls."  D. 33 ¶ 54.  Rodriguez similarly told Dacunha he should ignore Colon and try to change his schedule.  D. 33 ¶ 54; D. 33-2 at 21.

On another occasion, while Dacunha took orders from customers, Colon commented to Rodriguez, "don't you think he's a faggot the way he takes orders?"  D. 33 ¶ 55.  Dacunha overheard the comment by Colon to Rodriguez, said "excuse me" to Colon and Rodriguez then repeated the comment back to Dacunha.  D. 33 ¶ 55.

Sometime at the end of June 2017, Dacunha handed Colon the wrong sandwich.  D. 33 ¶ 56.  Colon threw the sandwich at Dacunha and said, "here you go, you stupid ass."  D. 33 ¶ 56. After the incident, Dacunha asked Gentile if he could leave his shift for the day, which Gentile allowed.  D. 33 ¶ 56.  As Dacunha was leaving, he told Ribeiro that he would quit if Colon's conduct continued.  D. 33 ¶ 56.

On July 3, 2017, Dacunha prepared a drink for a customer but slightly overfilled the cup, causing some of the drink to spill above the top of the lid.  D. 33 ¶ 57.  Colon picked up the drink and handed it to the customer.  D. 33 ¶ 57.  When the drink spilled in the customer's car, Colon called Dacunha a "faggot" and stated that he did not know how to wipe down cups.  D. 33 ¶ 57.  Dacunha announced that he was going to call the Equal Employment Opportunity Commission ("EEOC").  D. 33 ¶ 57.  Dacunha then went into a back room in the store and called the EEOC on his cell phone.  D. 33-2 at 15.

That same day, July 3, 2017, the Multi-Unit Manager David Francisco ("Francisco"), who was not at the store, received a phone call from Albano, another crew member, that Dacunha and Colon had gotten into an altercation.  D. 26 ¶ 16.  Francisco indicated his intention to investigate upon his return the following day.  Id.  While Dacunha was on the phone with the EEOC, a fellow crew member handed Dacunha the store phone to speak to Francisco.  D. 33-2 at 23.  Francisco informed Dacunha that he needed to leave the store while management figures everything out." D. 33 ¶ 58.

The following day, on July 4, 2017, Dacunha and Colon were scheduled to work the same shift.  D. 33 ¶ 59.  Francisco, with Ribeiro present, conducted several interviews including of Colon, Albano, and two other crew members, Maria Arruda ("Arruda") and Lucia Muse ("Muse") about what occurred the prior day.  D. 26 ¶ 17; D. 33 ¶ 61.  During the investigation, Albano, Arruda and Muise told Francisco that Dacunha said that he was going to get two women to come in to work to beat Colon up and that Dacunha was going to stab Colon.  D. 26 ¶¶ 19-21; D. 29; D. 30; D. 31-1.  Francisco also interviewed Colon and she also stated that Dacunha threatened to bring two girls in to beat her up and said he would stab her.  D. 26 ¶¶ 22-23.  Francisco recalled

that Colon "was very scared, physically shaken up and seemed truly concerned about whether [Dacunha] would take action on the threats that he made to her." D. 26 ¶ 22. Dacunha contends that he did not threaten Colon or otherwise verbally abuse Colon. D. 33 ¶ 19.

Based upon his investigation, Francisco concluded that Dacunha violated Skip Sagris's Workplace Violence policy. D. 26 ¶ 24. On July 5, 2017, Francisco and Ribeiro met with Dacunha in the Skip Sagris store manager's office and Francisco informed Dacunha that he was terminated due to threatening another employee with physical harm, which was witnessed by several other staff members. D. 26 ¶ 32. The termination notice that Francisco provided Dacunha reflected that the termination was for threatening another employee with violation. D. 26 ¶¶ 32-36. Even by Dacunha's own recounting, he told Francisco about Colon's statements to him in this meeting when Francisco was informing him of his termination for violating the Workplace Violence policy. D. 33 ¶ 36 (citing Dacunha deposition, D. 33-2 at 13). Francisco spoke to Colon who admitted that she used the derogatory term during the altercation and he gave Colon a written warning. D. 26 ¶ 37.

## IV.    Procedural History

Dacunha filed this lawsuit against Skip Sagris on May 17, 2018. D. 1. Skip Sagris has now moved for summary judgment on all counts. D. 24. The Court heard the parties on the pending motion and took the matter under advisement. D. 37.

## V.    Discussion

### A.    <u>Discrimination Claims (Counts II and V)</u>

Dacunha alleges that Skip Sagris discriminated against him based upon his sex/gender (Count II) in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and based upon his sex/gender and sexual orientation under Mass. Gen. L.c. 151B, § 4 (Count V). Both the federal and state discrimination claims are analyzed under the burden-shifting framework articulated in <u>McDonnell</u>

Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Bulwer v. Mt. Auburn Hosp., 473 Mass. 672, 681 (2016).

      *1.*    *Prima Facie Case*

Under McDonnell Douglas, an employee alleging discrimination must establish a *prima facie* case by showing that:  (1) he belonged to a protected class; (2) that he performed his job satisfactorily; and (3) his employer took an adverse employment decision against him.  See Miceli v. JetBlue Airways Corp., 914 F3d 73, 81 (1st Cir. 2019).  If plaintiff satisfies this showing, he is entitled to "a presumption of discrimination" and the burden shifts to the defendant.  Trahan v. Wayfair Maine, LLC, 957 F.3d 54, 61 (1st Cir. 2020); see Abramian v. Pres. & Fellows of Harvard Coll., 432 Mass. 107, 116 (2000).  Here, it is undisputed that Dacunha is a member of a protected class as he identifies as gay and bisexual. D. 33 ¶ 51.  It is also undisputed that Dacunha was terminated. D. 26 ¶ 32.  Skip Sagris disputes whether Dacunha performed his job satisfactorily. D. 25 at 5.

The *prima facie* case, however, is not meant to be an onerous burden.  Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003).  Skip Sagris contends that Dacunha cannot establish his *prima facie* case of discrimination because Dacunha's alleged threat to Colon on July 3rd shows that he did not perform his duties at an acceptable level because he violated the Workplace Violence Policy.  D. 25 at 5.  "[C]ourts that have dismissed discrimination claims at the *prima facie* stage based on unsatisfactory job performance have tended to do so where the employee's poor record was undisputed or unrelated to the alleged discrimination."  Walker v. City of Holyoke, 523 F. Supp. 2d 86, 102 (D. Mass. 2007).  Here, Dacunha disputes that he ever threatened Colon, D. 33 ¶¶ 19-23; 31-32, even as, as discussed below, Francisco's investigation gave Skip Sagris a good faith basis to reject that denial in light of the interviews with other employees.  For the

purposes of establishing a prima facie case, particularly in the absence of any record of unsatisfactory job performance and where the events of July 3rd are at the center of Dacunha's claims,  see Walker, 523 F. Supp. 2d at 102, Dacunha has met this initial showing.  Accordingly, the Court concludes that Dacunha has established a *prima facie* case of discrimination.

### 2.     *Legitimate, Nondiscriminatory Reason for Termination*

At the second stage of the McDonnell Douglas test, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action.  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993)).   "The employer's burden of articulating a non-discriminatory reason is only a burden of production, not a burden of persuasion; the burden of proving unlawful discrimination rests with the plaintiff at all times."  Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 99 (1st Cir. 2007).   Here, Skip Sagris has stated a legitimate, nondiscriminatory reason for terminating Dacunha, namely that his threats to Colon violated its Workplace Violence policy.   This policy reflects, in relevant part, that "[t]hreats, threatening language, or any other acts of aggression or violence made toward or by any employee will not be tolerated."  D. 26 ¶ 7; D. 27-2 at 46 (noting that "a threat includes any verbal or physical harassment or abuse, attempts at intimidating or instilling fear in others, menacing gestures, flashing of weapons, stalking, or any other hostile, aggressive, injurious and/or destructive actions undertaken for the purpose of domination or intimidation").   Although Dacunha denies making such threats, Francisco interviewed several employees who witnessed the threats against Colon and, based upon this investigation, concluded that Dacunha had violated this policy,  D. 26 ¶ 17; D. 29 (Muse Aff.) ¶¶ 2-3; D. 30 (Albano Aff.) ¶¶ 2-3; D. 31-1 (Arruda Aff.) ¶¶ 2-3, and provided same as the basis for termination in the termination notice that Francisco gave Dacunha. D. 27-4 at 2.  Accordingly,

Skip Sagris has satisfied its burden in articulating a legitimate, non-discriminatory reason for Dacunha's termination.

### 3. Pretext

At the third stage, as to the Title VII claim, Dacunha must "'present sufficient evidence to show both that the employer's articulated reason . . . is pretext and that the true reason is discriminatory.'" Santiago-Ramos, 217 F.3d at 54 (quoting Thomas v. Eastman Kodak Co, 183 F.3d 38, 56 (1st Cir. 1999)). "At summary judgment, this question reduces to whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his [protected status]." Dávila v. Corporación de Puerto Rico para la Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007). As to the c. 151B claim, the plaintiff need only show that the defendant's articulated reason is pretextual. Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 396 (2016). As to either claim, Dacunha has failed to make his showing as to this stage. Dacunha fails to show that his employer's stated reason for termination was false or 'cover' for another reason. As to it being pretext for discrimination, Dacunha has not provided any evidence of discriminatory animus on the part of the sole decisionmaker, Francisco.[1] Dacunha points to the fact that he was regularly called names by Colon, but there is no dispute that this co-worker was not the decisionmaker in his termination. See Dávila, 498 F.3d at 16-17 (holding that "[w]hen assessing a claim of pretext in an employment discrimination case, a court's focus is necessarily on the motivations and perceptions of the decisionmaker"); see also Gonzalez v. El Día, Inc., 304 F.3d 63, 69 (1st Cir. 2002) (noting that

---

[1] Dacunha alleges that Ribeiro was also a decisionmaker, but does not point to any specific, admissible, factual basis to refute Skip Sagris' undisputed showing that Francisco was the sole decisionmaker. D. 26 ¶ 29. That Ribeiro may have participated in some of the interviews that Francisco conducted, D. 33 ¶ 29, does not create a dispute of fact as to the undisputed record that Francisco was the sole decisionmaker.

"'stray workplace remarks,' as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus").  Moreover, the undisputed record is that Francisco did not know Dacunha's sexual orientation, D. 26 ¶ 14, and that he was not aware of Dacunha's complaints about Colon until his meeting with Dacunha to inform him of his termination for violating the Workplace Violence policy.  D. 26 ¶¶ 36, 44-45; D. 33 ¶¶ 44-45 (citing Dacunha's deposition, D. 33-2); D. 28 ¶¶ 4, 5.

Given this record, any challenges to the sufficiency of Francisco's investigation fail to show that the same was pretextual and the real reason for his termination was discrimination as Dacunha claims.  D. 32 at 11; see Ronda-Perez v. Banco Bilbao Vizcaya Argentaria Puerto Rico, 404 F.3d 42, 47 (1st Cir. 2005) (holding that employer's investigation deficiencies, including failure to take adequate notes was not sufficient evidence of pretext); see also Rivas Rosado v. Radio Shack, 312 F.3d 532, 535 (1st Cir. 2002) (noting that Title VII does not ensure against inaccuracy by an employer, only gender-based discrimination).  Similarly, the absence of any warning to Dacunha before his termination, on this record, does not provide evidence of pretext. Although departures from normal procedural sequences may be probative of whether an employer's reason for terminating an employee is pretext for discrimination, Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168-69 (1st Cir. 1998), here, there is no suggestion that Dacunha's termination, with no prior notice, for violation of the Workplace Violence policy was a departure from the employer's normal procedure.  To the contrary, the policy indicates that "[i]f an investigation confirms that a threat of a violent act or violence itself has occurred, [Skip Sagris] will take swift appropriate corrective action with regard to the offending employee."  D. 27-2 at 46.   Here, the undisputed record is that employees can be terminated for a first offense of this

policy, that Francisco has terminated other first offenders for violation of same, D. 26 ¶ 28 (citing Francisco's deposition), and Dacunha has not pointed to evidence to the contrary in the record. See Walker, 523 F. Supp. 2d at 104.

Pointing to the fact that Skip Sagris gave Colon a warning when she admitted that she called Dacunha a "faggot," but not to him after finding that he had made threats of physical violence, does not save this claim where "the offense each is accused of is not the same." Williams v. Frank, 757 F. Supp. 112, 119 (D. Mass. 1991); see Matthews v. Ocean Spray Cranberries, 426 Mass. 122, 130 (1997) (holding that although offenses of two employees need not be identical, the offenses must be comparable).  Since Dacunha has not shown that a disputed issue of material fact remains as to rebutting Skip Sagris's legitimate, non-discriminatory reason for his termination, the Court ALLOWS the motion for summary judgment as to Counts II and IV.

### B.       Retaliation (Counts III and VI)

As to his termination, Dacunha also asserts claims for retaliation under Title VII (Count III) and Chapter 151B (Count VI).  The burden shifting framework under McDonnell Douglas also applies to these retaliation claims.  At the first stage, Dacunha must demonstrate a *prima facie* case of retaliation by providing evidence that:  (1) he engaged in protected conduct; (2) he experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.  See Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005); see also Calero–Cerezo v. United States Dept. of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004).  If Dacunha satisfies this initial burden, the burden shifts to Skip Sagris at the second stage to articulate legitimate, nondiscriminatory reasons for the adverse action.  Bulwer, 473 Mass. at 683.  If Skip Sagris satisfies its burden, the burden shifts back to Dacunha, at the third and final stage, to show that Skip Sagris' articulated reasons are pretextual.  Bulwer, 473 Mass. at 681.

Skip Sagris does not dispute that Dacunha engaged in protected conduct (complaints to others regarding Colon's comments and call to EEOC) or that he suffered an adverse employment action (namely, his termination), but contests the necessary causal connection between the two. Although Dacunha alleges that he complained to others about Colon, the undisputed record is that he did not raise same with Francisco before the meeting in which Francisco called to inform him of his termination for violating the Workplace Violence policy.  D. 26 ¶¶ 36, 44-45; D. 33 ¶¶ 44-45; D. 33-2 at 13.  Moreover, there is no evidence that Francisco knew that Dacunha had contacted the EEOC before the decision to terminate him.  Francisco attests that he did not learn about this contact until after he had notified Dacunha of his decision to terminate his employment, D. 28 ¶ 6, and Dacunha's argument that Francisco should have known about same where Francisco was not present when he made such call, does not create a disputed issue of material fact to overcome the motion for summary judgment.  Accordingly, the Court allows Defendant's motion for summary judgment on Dacunha's retaliation claims (Counts III and VI).

### C.    Hostile Work Environment Claims (Counts I and IV)

Even as the Court has concluded that Skip Sagris is entitled to summary judgment on Dacunha's claims that his termination was discriminatory, the Court must still consider Dacunha's claims that he was subject to a hostile work environment during his employment under both Title VII because of his sex and gender (Count I) and c. 151B because of his sex, gender and sexual orientation.  (Count IV).  These state and federal claims are considered under similar standards. Brissette v. Franklin County Sheriff's Office, 235 F. Supp. 2d 63, 85 (D. Mass. 2003); Walker, 523 F. Supp. 2d at 106.  For such claim, Dacunha must establish that:  (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based upon his status in a protected class; (4) "'the harassment was sufficiently severe or pervasive so as to

alter the conditions of [his] employment and create an abusive work environment'; (5) the 'sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so'; and (6) 'some basis for employer liability has been established.'" See Lightbody v. Wal-Mart Stores E., L.P., No. 13-cv-10984-DJC, 2014 WL 5313873, at *3 (D. Mass. Oct. 17, 2014) (quoting Ponte v. Steelcase Inc., 741 F.3d 310, 320 & n.9 (1st Cir. 2014)).

A hostile work environment is one that is "pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace." Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 532 (2001) (quoting College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 162 (1987)) (internal quotation mark omitted). There is no precise test to determine whether a plaintiff has presented sufficient evidence that he was subjected to severe or pervasive harassment. See Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003) (citations omitted). A court must "examine all the attendant circumstances including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (citation omitted). In doing so, the First Circuit has warned against applying these considerations and its precedent "too rigid[ly]" where "the hostility *vel non* of a workplace does not depend on any particular kind of conduct." See Billings v. Town of Grafton, 515 F.3d 39, 48 (1st Cir. 2008). As such, evaluating a potentially hostile work environment is a fact-intensive inquiry "often reserved for a factfinder, but summary judgment is an appropriate vehicle for polic[ing] the baseline" for such claims. See Pomales, 447 F.3d at 83 (alteration in original) (citations and internal quotation

marks omitted).  The essence of this inquiry is "to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment."  Rosemond v. Stop & Shop Supermarket Co., 456 F. Supp. 2d 204, 212 (D. Mass. 2006) (citation omitted).

Skip Sagris does not dispute the first three elements of this claim, but focuses its motion on Dacunha's alleged failure to show that Colon's comments were so severe or pervasive as to have altered the conditions of his employment and created an abusive work environment, the fourth, requisite element of a hostile work environment claim. D. 25 at 13.  Dacunha, however, attests  that he was called an offensive and derogatory term because of his sexual orientation more than five to ten times in June and July 2017, D. 33 ¶ 53, and Colon did so in front of other employees and customers. D. 33 ¶¶ 54-57.  Although it is well settled that "offhand comments" may not sufficiently severe or pervasive to constitute a hostile work environment, Rios-Jimenez v. Sec'y of Veterans Affairs, 520 F.3d 31, 44 (1ˢᵗ Cir. 2008); D. 25 at 15 and cases cited, context matters.  This is particularly true where Dacunha's employment had only begun in June 2017, the same month that the derogatory comments began from his co-worker and continued as he worked with Colon every day, D. 33 ¶ 10, and as Colon admitted during Francisco's investigation, until July 3ʳᵈ, the date that lead to his termination two days later.  Considering the present record, a reasonable trier of fact may find that the purported conduct Dacunha experienced created a hostile work environment.  Lightbody, 2014 WL 5313873, at *4 (denying summary judgment in employer's favor where a reasonable jury could find that alleged incidents were frequent, threatening and humiliating); see Billings, 515 F.3d at 48 (discussing how there are no particular types of behavior necessary to constitute hostile work environment and reversing district court's entry of summary judgment in employer's favor).

Dacunha, additionally allege that that on multiple occasions Gentile, Rodriguez and Ribeiro failed to act to prevent Colon's conduct and placed the onus on Dacunha to ignore her or switch his shift to avoid her.  D. 33 ¶¶ 51-52.  These allegations also raise a triable issue as to if Skip Sagris took reasonable steps to rectify acts of harassment following Dacunha's complaints.  See Ryan v. Holie Donut, Inc., 82 Mass. App. Ct. 633, 638 (2012).  Accordingly, for all of these reasons, the Court denies Skip Sagris' motion for summary judgment as to Dacunha's hostile work environment claims (Counts I and V).

## VI.    Conclusion

For the reasons discussed above, the Court ALLOWS IN PART and DENIES IN PART the motion for summary judgment, D. 24.  The motion is ALLOWED as to Counts II, III, V and VI and is DENIED as to the hostile work environment claims asserted in Counts I and IV.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

14